**E-FILED**
Tuesday, 23 October, 2012  02:34:40 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

---

| | | |
|---|---|---|
| **JAHMILA HARROLD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 10-CV-2165** |
| | ) | |
| **SYGMA NETWORK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#23) filed by Defendant, Sygma Network (Sygma). Following this court's careful consideration of the arguments of the parties, Sygma's Motion for Summary Judgment (#23) is GRANTED.

## FACTS[1]

Plaintiff, Jahmila Harrold, who is African American, was hired by Sygma on April 24, 2006, as a warehouse selector. It is undisputed that the warehouse selector position is a physically demanding position which requires extensive walking and the ability "to safely lift 50 lbs. frequently and up to 75 lbs. occasionally" as is stated on the position's job description which Plaintiff signed. Specifically, the selectors are required to move about the warehouse picking products from industrial racking to build customer orders onto pallets. When a pallet is full, or the order complete, the pallet is then moved with a pallet jack to the

---

[1] The facts are taken from the Undisputed Material Facts listed by Defendant, the Undisputed Material Facts listed by Plaintiff, and the documents filed by the parties. However, this court has only included facts which are actually material to the issues in this case and which are adequately supported in the record.

loading dock for loading onto semitrailers which deliver the product to customers.

On July 27, 2006, Plaintiff was involved in a workplace accident with another employee, April Shutes,[2] who is white.  Plaintiff injured her foot in the accident.  Jerry Jacobsen, Sygma's safety officer, took Plaintiff to a medical clinic where she was treated by a physician for her injury and drug tested.  Under Sygma's Drug and Alcohol Policy, an employee is required to take a drug or alcohol test after an accident that results in an injury.  It is customary for the safety manager to escort an employee to the clinic for a drug test.  According to Jacobsen's affidavit, by the time Plaintiff was returned to Sygma on the day of the accident, it was too late in the day to escort Shutes for testing before the clinic closed.  Jacobsen escorted Shutes to the clinic to get drug tested the next morning.  Both Plaintiff and Shutes lost their respective safety bonuses as a result of the accident.  According to Plaintiff, she was not taken to the medical clinic until four hours after the accident occurred.

On August 18, 2006, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  Plaintiff stated that she was involved in a workplace accident and was required to submit to drug testing.  Plaintiff claimed that a "similarly-situated, non-Black co-worker also involved in the accident was not required to submit for drug testing until the following day."  Plaintiff claimed that she was discriminated against because of her race.

Plaintiff admitted during her deposition taken on March 9, 2012, that Sygma's drug

---

[2] The other employee involved in the accident has been referred to as April "Shute" and as April "Shutes."  This court has chosen to refer to her as April "Shutes."

2:10-cv-02165-MPM-DGB   # 28   Page 3 of 14

testing policy was applied uniformly to African American and non-African American employees. Plaintiff testified that the only "exception" of which she was aware was that Shutes was taken for testing the day after rather than the day of the accident.

Initially, Plaintiff's injury was described as a relatively minor sprained ankle and she was released to work with minor restrictions, which were accommodated. On August 21, 2006, Plaintiff's physician released her to full work without restrictions. However, in late September 2006, Plaintiff's restrictions were increased to require that she perform light duty seated work. For the next several months, Sygma provided Plaintiff light duty work that allowed her to spend most of her time sitting. Plaintiff worked both at Sygma's facility and, when those opportunities ran out, via placements at independent external non-profits such as the Red Cross and WorkSource. Plaintiff continued to be paid at her same hourly rate by Sygma when she was placed in these positions. Plaintiff has stated that she was not always able to work a 40 hour week and lost some pay for that reason.

During the first half of 2007, Plaintiff returned to work at the Sygma facility, again with light duty restrictions that limited her lifting to 20 lbs. or less, limited the amount of time she could stand or walk and required that she be allowed breaks as she deemed necessary. On May 30, 2007, Plaintiff refused to work on the cooler dock and was written up for insubordination. Plaintiff admitted during her deposition that the requested task was not outside of her restrictions. Plaintiff testified that she was afraid of slipping and falling with her fracture boot on. Plaintiff did not lose any monetary benefit as a result of the write-up.

On June 29, 2007, Plaintiff submitted a doctor's note which stated that her condition required that she be off work entirely until further notice.  On August 21, 2007, Plaintiff filed for chapter 7 bankruptcy in the Central District of Illinois.  In her disclosure schedules, filed under penalty of perjury, Plaintiff did not disclose her EEOC charge or any other claims she believed she had against Sygma.

Plaintiff remained off work and did not communicate with Sygma until September 25, 2007.  At that time she contacted Jacobsen by telephone to say that she had been released to return to restricted work.  As of September 25, 2007, Plaintiff's restrictions were that she work light duty only, no lifting, limited weight bearing and limited walking.  According to Plaintiff, she was fired by Jacobsen during this telephone call.  Jacobsen stated in his affidavit that he instructed Plaintiff to contact her workers' compensation attorney who would discuss the matter with Sygma's counsel before any determination about a return to work would be made. Jacobsen stated that, at the time he received Plaintiff's telephone call, there was no light duty work available, nor were there any vacant positions for which Plaintiff was qualified or able to perform given her physical restrictions.  Plaintiff started working at another company in November 2007.

Plaintiff's medical restrictions have not changed since September 25, 2007, and she never directly contacted Sygma again regarding a possible return to work or any change in her physical abilities.  Plaintiff has admitted that she was unable to perform the duties of the warehouse selector position and remains unable to perform those duties.  Plaintiff testified that the only accommodation she believed might have allowed her to return to work was

assignment to what she described as the "small wares" warehouse selector position.  This position was held by Kelly Barrett for the entire time Plaintiff was employed by Sygma. Bryan Boyd also worked in this position.  Jacobsen stated in his affidavit that, while the small wares duties in part involved filling orders for lighter weight goods such as spice packets, plastic cutlery and the like, the position also required the same essential duty of selecting products and the ability to lift at least 50 lbs.  Specifically, the small wares assignment included picking orders for chemical and irregularly shaped items, such as onions, that came in 50 lb. bags.  In addition, cleaning supplies that came in five gallon buckets weighing 25-30 lbs. were also the responsibility of the small wares position.  Like all of the other warehouse selector positions, walking to and from the locations in which the items were stored was also required.  There was insufficient order picking of solely the light weight goods to fill a full time position.

On December 3, 2007, Plaintiff's debts were discharged in bankruptcy.  On March 26, 2008, Plaintiff filed a second charge of discrimination.  Plaintiff stated that she had filed an EEOC charge and, since filing the charge, Sygma denied her reasonable accommodations, disciplined her, and discharged her on September 25, 2007.  Plaintiff stated that she believed she had been discriminated against because of her disability and had been retaliated against for filing a charge of discrimination.  In July 2008, Sygma informed Plaintiff by letter that her employment was considered terminated, pursuant to its policy of terminating any employee who had not actively worked for one year.

PROCEDURAL HISTORY

On August 17, 2010, Plaintiff filed a pro se Amended Complaint (#5) in this court. Plaintiff alleged that Sygma discriminated against her on two different occasions.  She alleged that, on July 27, 2006, she was made to go and take a drug test and the other employee who was involved in the accident, who was white, was not made to take a drug test.  Plaintiff alleged that she was also discriminated against when she was not allowed to come back to work after she was taken off work by her doctor due to her work injury.  On November 4, 2010, Sygma filed its Answer and Affirmative Defenses (#10).

On May 30, 2012, Sygma filed its Motion for Summary Judgment (#23) with attached exhibits.  A Notice (#24) was sent to Plaintiff the same day.  The Notice stated:

> NOTICE IS HEREBY GIVEN that a case-dispositive motion (such as a motion for summary judgment or motion for judgment on the pleadings) has been filed. See Fed.R.Civ.P.56. Please be advised that you have **twenty-one (21)** days from the date of service to respond to the motion. If you do not respond, the motion, if appropriate, will be granted and the case will be terminated without a trial. See, generally, Lewis v. Faulkner, 689 F. 2d 100 (7th Cir. 1982); Timms v. Frank, 953 F. 2d 281 (7th Cir. 1992).  Under the court's local rules, a motion is deemed to be uncontested if no opposing brief is filed. See L.R. CDIL 7.1(D)(2).

When a motion for summary judgment is made and properly supported, you must not simply rely upon the allegations made in your complaint. Rather, you must respond by affidavit(s) or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, a copy of which is attached. Your response must set forth specific facts showing that there is a genuine issue of material fact for trial. If you do not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment. **See Fed. R. Civ. P 56(e) and L.R. 7.1(attached)**.

A copy of Rule 56 of the Federal Rules of Civil Procedure and a copy of Local Rule 7.1 were attached to the Notice sent to Plaintiff.

On July 25, 2012, Plaintiff filed a document entitled "Motion for Summary Judgment" (#26), with attached exhibits.  In the document, Plaintiff argued that there were issues of material fact to be decided by a trier of fact.  Therefore, on August 1, 2012, this court entered a text order and stated that the document filed by Plaintiff was actually a Response to Sygma's Motion for Summary Judgment.  On August 8, 2012, Sygma filed its Reply.  Sygma pointed out that Plaintiff did not respond to its Statement of Undisputed Facts and argued that this court should deem all of the facts stated in its Motion for Summary Judgment admitted.

ANALYSIS

I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  In making this determination, the court must construe the facts and reasonable inferences in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010).  However, a court's favor toward the nonmoving party does not extend to drawing "[i]nferences that are supported by only speculation or conjecture."  Singer, 593 F.3d at 533, quoting Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008).  Further, when the non-movant does not respond to the movant's statement of facts, the non-movant concedes the movant's version of the facts. Waldridge, 24 F.3d at 922; Columbia Pictures Indus., Inc. v. Landa, 974 F. Supp. 1, 3 (C.D. Ill. 1997).

II.  PLAINTIFF'S CLAIMS

In its Motion for Summary Judgment, Sygma set out undisputed facts and attached documentary support for the facts.  Plaintiff was notified that she must respond to the Motion for Summary Judgment "by affidavit(s) or as otherwise provided in Rule 56 of the Federal

Rules of Civil Procedure, a copy of which is attached." She was informed that her "response must set forth specific facts showing that there is a genuine issue of material fact for trial" and that if she did "not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment."

In her Response, Plaintiff repeated some of the statements included in Sygma's Statement of Undisputed Facts and stated some additional facts but did not respond at all to many of the facts listed by Sygma. This court therefore concludes that Plaintiff has conceded these facts. See Waldridge, 24 F.3d at 922-23; Columbia Pictures, 974 F. Supp. at 3-4. This court notes that it did include in the court's recitation of the facts some of the additional facts stated by Plaintiff to the extent that these facts are material and are either supported by the attached documentation or not disputed by Sygma.

In its Motion for Summary Judgment, Sygma argued that it was entitled to summary judgment because Plaintiff's claims are barred due to the fact that she did not disclose her claims in the bankruptcy proceeding. Sygma also argued that Plaintiff cannot show she was discriminated against because of her race because both Plaintiff and Shutes were drug tested, consistent with Sygma's non-discriminatory policy, and both lost their safety bonus. In addition, Sygma argued that Plaintiff cannot succeed on her claim of disability discrimination because the nature of her restrictions prevented her from performing the essential functions of her job at Sygma.

In her Response, Plaintiff stated that she was following her attorneys' advice when

she only listed her workers compensation claim on her bankruptcy filings.  Plaintiff also argued that there was more than enough evidence to support her claims of "retaliation discrimination."  She argued there was no reason why Shutes could not have been drug tested the same day as the accident.  Plaintiff further argued that she was retaliated against for filing an EEOC charge and was denied accommodations to return to work.

This court agrees with Sygma that Plaintiff's race discrimination claim fails.  This court agrees that Plaintiff has no direct evidence of race discrimination and must proceed under the indirect method set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  To establish a prima facie case of race discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the job in question or was meeting the employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated persons not in the protected class more favorably.  Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 376 (7th Cir. 1998).  This court agrees with Sygma that Plaintiff cannot establish the third and fourth prongs of the prima facie case.

As far as the third prong, Plaintiff cannot show that she suffered an adverse employment action.  Subjecting an employee to a drug test that is performed in a routine fashion following the legitimate practices of the employer is not an adverse action.  Stockett v. Muncie Ind. Transit Sys, 221 F.3d 997, 1001-02 (7th Cir. 2000); Young v. Chicago Transit Auth., 189 F. Supp. 2d 780, 789 (N.D. Ill. 2002).  Moreover, the loss of her safety bonus is not an adverse action because "the loss of a bonus is not an adverse employment action in

a case such as this where the employee is not automatically entitled to the bonus." See

Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996).  As far as the fourth prong, Plaintiff

cannot show that a similarly situated non-African American employee was treated more

favorably. Both Plaintiff and Shutes were drug tested and both lost their safety bonus.

Plaintiff has not shown that there was anything significant about the fact that Shutes was not

tested until the next day.  This court agrees with Sygma that Plaintiff cannot claim that the

minor delay in testing Shutes was adverse to her or favorable to Shutes.

This court notes that, to the extent that Plaintiff may be claiming that her discharge

was based on race discrimination, that claim also fails.  Plaintiff cannot meet the second

prong of the prima facie case because she has admitted that she cannot perform the duties of

the warehouse selector position.

This court further agrees with Sygma that Plaintiff's claim for disability

discrimination fails as well.  To establish a claim under the Americans with Disabilities Act

(ADA), an individual must show: (1) that she is disabled; (2) that she is otherwise qualified

to perform the essential functions of the job with or without accommodation; and (3) that the

employer took an adverse job action against her because of her disability or failed to make

a reasonable accommodation.  Stevens v. Ill. Dep't of Transp., 210 F.3d 732, 736 (7th Cir.

2000), citing 42 U.S.C. §§ 12111-12.  In this case, Plaintiff admitted that the written job

description for the warehouse selector position was accurate and the position required heavy

lifting and walking.  Plaintiff further admitted that she was restricted from doing any lifting

and to limited walking in September 2007, when she asked to return to work, and that these

restriction have not changed.[3]  Therefore, this court concludes that Plaintiff was not a qualified individual with a disability because she could not perform the essential functions of her job with or without reasonable accommodation.  See Peters v. City of Mauston, 311 F.3d 835, 845-46 (7th Cir. 2002); Basith v. Cook County, 241 F.3d 919, 927-28 (7th Cir. 2001).

In reaching this conclusion, this court agrees with Sygma that Plaintiff cannot show that it failed to make a reasonable accommodation.  Under the ADA, "an employer is not required to modify, reduce, or reallocate the essential functions of a job to accommodate an employee."  Dvorak v. Mostardi Platt Assocs., Inc., 289 F.3d 479, 484 (7th Cir. 2002); see also Peters, 311 F.3d at 845-46.  Likewise, an employer is not required to establish a permanent light duty position or create entirely new positions.  Hansen v. Henderson, 233 F.3d 521, 523 (7th Cir. 2000).  The only potential accommodation identified by Plaintiff was that she be allowed to replace Barrett in the small wares position.  This would not be a reasonable accommodation.  First, the undisputed evidence shows that this position required significant lifting and walking, duties which Plaintiff's medical restrictions prohibited.  Plaintiff's suggestion that she be assigned to a position she could not do based upon the restrictions imposed by her doctor would not be reasonable.  See Ozlowski v. Henderson, 237 F.3d 837, 840-41 (7th Cir. 2001).  Second, an employer is not required to "bump" other employees to create a vacancy so as to be able to reassign the disabled employee.  Gile v.

---

[3]  This court agrees that it is immaterial whether Plaintiff was terminated by Jacobsen on September 25, 2007, as she has claimed, or whether she was terminated when she received the formal letter of termination in July 2008.  It is undisputed that Plaintiff was unable to perform the warehouse selector position for that entire period of time.

United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996); Walsh v. United Conveyor Corp., 222

F. Supp. 2d 997, 1005 (N.D. Ill. 2002).

As to Plaintiff's argument that she was discharged in retaliation for filing a charge of

discrimination, this court agrees with Sygma that no retaliation claim was included in

Plaintiff's pro se Amended Complaint.  This court further agrees that the undisputed facts

do not support a claim of retaliation.  The facts show that Plaintiff was discharged more than

a year after she filed her discrimination charge because she could not perform the essential

functions of her position.  This court agrees with Sygma that the facts show that it continued

to employ Plaintiff in light duty positions, to the extent such work was available and her

restrictions permitted, for almost a year following her EEOC charge.  The facts further show

that, despite that lengthy period of accommodation, Plaintiff's restrictions became more,

rather than less, severe and she was taken off work entirely on June 29, 2007.  When Plaintiff

asked to come back to work on September 25, 2007, her restrictions required limited weight

bearing, limited walking, and prohibited her from doing any lifting at all.  Sygma has shown

that there was no light duty work available, nor were there any vacant positions for which

Plaintiff was qualified or able to perform given her physical restrictions.  Therefore, the

evidence does not support a claim of retaliation.[4]

Because this court has concluded that Sygma is entitled to judgment in its favor on

Plaintiff's claims, this court does not need to consider Sygma's argument that Plaintiff is

---

[4] Moreover, this court agrees with Sygma that the fact that it provided greater accommodations than actually were required under the ADA for more than one year does not mean that it violated the ADA when it could no longer provide accommodations.  See Amadio v. Ford Motor Co., 238 F.3d 919, 929-30 (7th Cir. 2001).

judicially estopped from pursuing her claims due to her failure to disclose the claims in her bankruptcy filing.  This court notes, however, that this argument is well taken and is not undermined by Plaintiff's argument that she was following her attorney's advice.  See Cannon-Stokes v. Potter, 453 F.3d 446, 448-49 (7th Cir. 2006).

   IT IS THEREFORE ORDERED THAT:

(1) Sygma's Motion for Summary Judgment (#23) is GRANTED.

(2) Judgment is entered in favor of Sygma and against Plaintiff.

(3) This case is terminated.

ENTERED this 19th day of October, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE